firm the district court's order. Rule 34(j)(2)(C), Rules of the Sixth Circuit.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Paul EDMONDS, Defendant–
Appellant.**

**No. 00–1352.**

United States Court of Appeals,
Sixth Circuit.

May 8, 2001.

Before JONES and DAUGHTREY, Circuit Judges; ECONOMUS, District Judge.*

*ORDER*

John Paul Edmonds appeals his judgment of conviction and sentence. The parties have expressly waived oral argument pursuant to Rule 34(j)(3), Rules of the Sixth Circuit, and we agree that oral argument is not necessary. Fed. R.App. P. 34(a).

Edmonds was charged with one count of conspiracy to possess with the intent to distribute marijuana, a violation of 21 U.S.C. §§ 2, 841, 846; and two counts of manufacturing marijuana, violations of 21

* The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

U.S.C. § 841. Edmonds pleaded guilty to the two manufacturing counts, and the government moved the court to dismiss the distribution count. The district court sentenced Edmonds to thirty months of imprisonment to be followed by three years of supervised release.

In his timely appeal, Edmonds argues that the district court erred by enhancing his base offense level two levels, pursuant to USSG § 2D1.1(b)(1), for possession of a dangerous weapon.

■ Whether the facts found by the district court warrant the application of a particular guideline is a legal question we review de novo. *United States v. Partington*, 21 F.3d 714, 717 (6th Cir.1994).

Upon review, we conclude that the district court did not err. Section 2D1.1(b)(1) provides a two-level increase to the base offense level for a person convicted of certain drug trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed...." Application note three for this guideline explains:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

§ 2D1.1, comment. (n.3).

■ The facts are not disputed. Although Edmonds possessed a host of firearms at his home, where he also grew marijuana, the district court excluded from consideration all but one of these guns because the others were obviously for hunting. The district court applied the enhancement to Edmonds's base offense level because Edmonds possessed a stolen, unloaded, .357 revolver in a locked safe in the bedroom of his home. The court also noted that Edmonds's firearms were found along with a large number of marijuana plants, metric weights, and scales commonly used by drug dealers, and a collection of materials used to grow marijuana. Although he presented no evidence at sentencing regarding the firearms, Edmonds assigned two reasons for the presence of the rifles and shotguns: (1) he was an avid hunter, and (2) he was holding a majority of the weapons for a distraught friend who had been present when an individual had been killed while playing Russian Roulette. Although the court found these reasons to be adequate to establish that the rifles and shotguns were not connected to Edmonds's drug activities, the court found that Edmonds provided no evidence that showed that he possessed the stolen revolver for reasons unrelated to drug activities.

Edmonds failed to carry his burden of showing that it was clearly improbable that the revolver was unrelated to his drug activities. Because he did not dispute that he possessed the revolver, a presumption arose that the revolver was connected to Edmonds's illicit drug activities. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.1996). The burden then shifted to Edmonds to show that it was clearly improbable that the revolver was connected to the offense. *Id.* Edmonds argues that the district court improperly concluded that he failed to carry this burden because the gun was unloaded and locked in a safe, as in the example of the hunting rifle set out in § 2D1.1, comment. (n.3), and in the light of this court's decisions in *United States v. Zimmer*, 14 F.3d 286 (6th Cir.1994), and *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991)

These circumstances are distinguishable. In *Zimmer*, this court concluded that the district court erred by enhancing the defendant's sentence for possession of a weapon under § 2D1.1 because: (1) the defendant, who lived in a rural area, showed by unrefuted testimony that–(a) three rifles found on the premises were for hunting, (b) the rifle found in the bathroom had been used the day before the search to kill a deer from the bathroom window, and (c) the rifles were found in the main part of the house while the marijuana plants were grown in a "secret room" in the basement; and (2) the defendant had been charged only with operating a marijuana manufacturing operation, not "drug dealing." *Zimmer*, 14 F.3d at 290–91. In *Garner*, this court concluded that the defendant showed it was clearly improbable that a gun was connected with his drug trafficking offense because the gun: (1) was a single shot antique Derringer, which was described as a collector's piece; (2) was not a type of gun normally associated with drug activity; and (3) was kept unloaded in a locked safe, where one would tend to keep a firearm that was possessed legally. *Garner*, 940 F.2d at 175–76.

■ This court considers several factors, none of which is completely controlling, in determining whether the application of § 2D1.1(b)(1) was proper: (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession. *See, e.g., United States v. Calhoun*, 49 F.3d 231, 237 (6th Cir.1995) (loaded twenty gauge shotgun under the bed); *United States v.. Chalkias*, 971 F.2d 1206, 1217 (6th Cir.

1992) (unloaded Mac10 semiautomatic and no ammunition found in basement rafters of house where drugs were stored); *United States v. McGhee*, 882 F.2d 1095, 1099 (6th Cir.1989) (defendant presented no evidence at sentencing regarding firearms).

The record evidence supports the sentencing judge's decision to apply the § 2D1.1(b)(1) enhancement. Most importantly, Edmonds failed to present evidence at sentencing that showed that the revolver was unrelated to drug activities. In contrast to the defendant in *Zimmer*, the presentence report shows that Edmonds distributed marijuana in addition to manufacturing it, and he was indicted for this crime. *Cf. Zimmer*, 14 F.3d at 290–91. Although the gun was locked in a safe, the gun was stolen, no evidence was presented that it was inoperable or an antique collectible, and the .357 revolver is the type of weapon regularly associated with drug trafficking. *Cf. Garner*, 940 F.2d at 175–76. Although accessibility was limited by the lock on the safe, the revolver was not remote from paraphernalia and contraband seized from Edmonds's home. In sum, with his failure to present additional evidence to the contrary, the nature of the revolver and the circumstance in which it was found do not support a finding that it was extremely unlikely that the gun had anything to do with Edmonds's drug trafficking. *Chalkias*, 971 F.2d at 1216.

Accordingly, we affirm the district court's judgment.